CORRECTED APRIL 10, 2012 +

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-55244 |
| Plaintiff - Appellee, | D.C. Nos. 3:10-cv-01852-IEG |
| v. | 3:07-cr-03475-IEG-1 |
| CARLOS SOTO-LOPEZ, AKA Carlos Mendoza-Camacho, AKA Carlos Soto, AKA Manuel Urias-Castro, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, District Judge, Presiding +

Argued February 7, 2012
Submitted April 6, 2012
Pasadena, California

Before: REINHARDT, WARDLAW, and CALLAHAN, Circuit Judges.

---

*        This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Carlos Soto-Lopez appeals the district court's denial of his 28 U.S.C. § 2255 habeas petition, in which he requested that the district court vacate his sentence. Soto-Lopez argues that his sentence should be vacated because he received ineffective assistance of counsel from attorney Christian De Olivas, who advised him to reject a favorable "fast-track" plea offer. The district court dismissed Soto-Lopez's petition, finding that the facts alleged by Soto-Lopez did "not me[e]t his burden to overcome the strong presumption that counsel's conduct fell 'within the wide range of professional assistance.'" *Soto-Lopez v. United States*, No. 07CR3475-IEG, 2011 WL 176026, at *4 (S.D. Cal. Jan. 19, 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). The district court granted a certificate of appealability.

We have jurisdiction over Soto-Lopez's timely appeal. 28 U.S.C. § 2253(c). We review the district court's denial of Soto-Lopez's § 2255 petition for a writ of habeas corpus de novo. *United States v. Fredman*, 390 F.3d 1153, 1156 (9th Cir. 2004). Because "a district court may summarily dismiss a § 2255 motion only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are palpably incredible or patently frivolous," *United States v. Withers*, 638 F.3d 1055, 1062-63 (9th Cir. 2011) (citation omitted), we reverse.

As the Supreme Court recently confirmed, "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, No. 10-209, – S. Ct. —, 2012 WL 932019, at *5 (Mar. 21, 2012). The right to effective assistance of counsel in evaluating a plea offer is not contingent on whether a defendant ultimately accepts or rejects a plea. *See id.* To prove ineffective assistance during the plea phase of a prosecution, a petitioner "'must demonstrate gross error on the part of counsel. . . .'" *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (quoting *McMann v. Richardson*, 397 U.S. 759, 772 (1970)). "Counsel cannot be required to accurately predict what the jury or court might find, but he can be required to give the defendant the tools he needs to make an intelligent decision." *Id* at 881.

Citing *Turner v. Calderon*, the district court found that Soto-Lopez had the tools he needed to make an intelligent decision about rejecting the plea deal.[1] *See Soto-Lopez*, 2011 WL 176026, at *4. However, the facts here are easily distinguishable from *Turner*, where "counsel and Turner chose to proceed to trial based on counsel's defense strategy and presumably sincere prediction that the jury would not award a sentence of death," *Turner*, 281 F.3d at 881. Soto-Lopez has sufficiently alleged facts that overcome the presumption that De Olivas's advice was based on a sincere trial strategy. He has alleged that, as a result of representations by an inexperienced lawyer who was concurrently engaged in a dizzying range of unprofessional conduct, he rejected a fast-track plea, jettisoned his court-appointed attorney, and ultimately pleaded guilty to a much more serious

---

[1]In finding that Soto-Lopez had the tools he needed to make an intelligent decision, the court relied in part on evidence that, before Soto-Lopez was represented by De Olivas, Soto-Lopez's court-appointed counsel had explained to him that if he rejected the plea he would be indicted for illegal reentry and would face a Guidelines range substantially higher than the 48 months the government had offered. That Soto-Lopez was properly advised by the Federal Defenders before he was represented by De Olivas does nothing to demonstrate that De Olivas provided effective assistance. Soto-Lopez's ineffective assistance claim centers on whether De Olivas's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The Federal Defenders' performance is irrelevant to this inquiry, especially because during the time he represented Soto-Lopez, De Olivas advised him that the Federal Defenders had provided the wrong advice.

4

charge than set forth in the plea agreement he had rejected, with no plea agreement in place.

Soto-Lopez alleges that De Olivas—operating in a district court in which he had very little experience—persuaded Soto-Lopez to reject both his court-appointed lawyer and the government's 48-month fast-track deal, and instead pay $4,000 to De Olivas, representing that he could secure a 24- to 30-month deal. By rejecting the fast-track deal, Soto-Lopez's statutory maximum exposure increased from 54 months for three § 1325 charges to twenty years for one § 1326 charge. While the § 1326 charge was pending, De Olivas filed no dispositive motions, and Soto-Lopez ultimately pleaded guilty to the § 1326 charge with no plea agreement in place.

De Olivas had little basis for recommending that Soto-Lopez reject the fast-track offer beyond a desire to persuade Soto-Lopez to retain his services in place of the Federal Defenders. There is no evidence that De Olivas had any experience with persuading prosecutors in the Southern district to improve plea agreements, no indication that De Olivas knew of any legal defense that Soto-Lopez could utilize at trial, and no evidence that —at the time he advised Soto-Lopez to reject the plea offer—De Olivas knew of any reason Soto-Lopez could reasonably expect

the government to offer him a 24- or 30-month plea deal when he faced a minimum 77-month sentence under the Guidelines.

These facts must be considered in combination with a petition filed by the Standing Committee on Discipline for the Southern District ("disciplinary petition") that led to De Olivas's suspension during the pendency of Soto-Lopez's sentencing, and which details De Olivas's systematic unprofessional conduct in the Southern District of California. While "the fact that an attorney is suspended or disbarred does not, without more, rise to the constitutional significance of ineffective counsel under the Sixth Amendment," *United States v. Mouzin*, 785 F.2d 682, 696–97 (9th Cir. 1986), "counsel's disbarment or suspension may raise doubts about his competence," *United States v. Ross*, 338 F.3d 1054, 1056 (9th Cir. 2003). The disciplinary petition charges De Olivas with unprofessional conduct in other cases, including making false statements, and conduct that "plac[ed his] financial motivations above the interests of his client and expos[ed] his client to prejudice and delay." The district court itself noted at sentencing that "Soto-Lopez

6

"probably [was] the victim of why [De Olivas was] no longer practicing."[2]

Under *Strickland*, we must try "to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. When the serious doubts about De Olivas's professionalism and honesty occasioned by his contemporaneous conduct are combined with the facts of his representation of Soto-Lopez, the record supports Soto-Lopez's claim that De Olivas provided him ineffective assistance of counsel.[3]

---

[2]Soto-Lopez further alleges that after De Olivas's conduct was exposed, the government apparently recognized that De Olivas had defrauded a number of defendants who rejected fast-track plea deals on De Olivas's advice, and consequently re-extended fast-track plea offers to these defendants. At argument, the government offered no convincing explanation as to why it treated Soto-Lopez differently from several of De Olivas's other former clients.

[3]The dissent asserts that Soto-Lopez's decision against withdrawing his guilty plea after learning that De Olivas was suspended from practice indicates that Soto-Lopez made an informed, strategic choice to reject the earlier fast-track deal offer. This is not so. By the time he learned that De Olivas had been suspended, Soto-Lopez had no reasonable choice but to proceed to sentencing. The government had withdrawn the fast-track plea offer, and Soto-Lopez had no legal defense to the § 1326 violation with which he was now charged. With nothing to gain by withdrawing his guilty plea (and the possibility of losing any acceptance of responsibility credits at sentencing), Soto-Lopez had no option to proceed other than he did. The decision not to withdraw his guilty plea is equally irrelevant to the prejudice inquiry. That Soto-Lopez did not withdraw the guilty plea months after the fast-track plea offer had been rescinded provides no support for the dissent's claim that without De Olivas's intervention—which eliminated the possibility of the fast-track deal—Soto-Lopez would have been put in the same position.

When a defendant alleges that a violation of the right to counsel resulted in the defendant's rejection of a favorable plea offer, the

> defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."

*Lafler*, 2012 WL 932019, at *5. The district court did not address the question of prejudice because it concluded that De Olivas's representation was not deficient. The government's brief likewise does not address prejudice.

Soto-Lopez has alleged sufficient facts to show prejudice: If De Olivas had not counseled Soto-Lopez that he could receive a 24-or 30-month sentence, and instead been adequately advised as to the dramatic differences in potential sentences, Soto-Lopez would not have rejected the government's plea based on three counts of illegal entry in violation of 8 U.S.C. § 1325. Until De Olivas advised Soto-Lopez to withdraw from the deal, both the government and Soto-Lopez were taking the procedural steps towards satisfying the terms of the fast-track deal. If Soto-Lopez had not abruptly changed course once he encountered De Olivas, he would then have received the benefit of the 48-month plea offer, and in

8

any event could have received no more than the statutory maximum of 54 months for the three counts of illegal entry. There is no evidence that the district court had cause to exercise its discretion to reject fast-track plea agreements.

In accordance with 28 U.S.C. § 2255(b), Soto-Lopez is entitled to a prompt evidentiary hearing as to his claims of ineffective assistance. We therefore remand and direct the district court to make findings of fact concerning Soto-Lopez's allegations. If Soto-Lopez's factual allegations are determined to be true,

> the correct remedy in these circumstances . . . is to order the [Government] to reoffer the plea agreement. Presuming respondent accepts the offer, the [district] court can then exercise its discretion in determining whether to vacate the convictions and resentence respondent pursuant to the plea agreement, to vacate only some of the convictions and resentence respondent accordingly, or to leave the convictions and sentence . . . undisturbed.

*Lafler*, 2012 WL 932019 at *12; Fed.R.Crim.P. 11(c)(3)(A), (c)(5) (giving district courts the right to reject a charge bargain of the type specified in Rule 11(c)(1)(A)).

**REVERSED and REMANDED with instructions.**

*United States v. Soto-Lopez*, No. 11-55244

CALLAHAN, Circuit Judge, dissenting:

I respectfully dissent. Even if the district court were to determine on remand that all of Soto-Lopez's allegations are true, those allegations are not sufficient to satisfy either the deficient performance or the prejudice prongs of *Strickland v. Washington*, 466 U.S. 668 (1984). That conclusion would have been correct before the Supreme Court's recent decision in *Lafler v. Cooper*, No. 10-209, -- S. Ct. --, 2012 WL 932019 (Mar. 21, 2012), and it remains correct today.

## I. Performance

Our decision in *Turner v. Calderon*, 281 F.3d 851 (9th Cir. 2002), which the majority properly relies on in its disposition, holds that, in the plea context, "[c]ounsel cannot be required to accurately predict what the jury or court might find, but he can be required to give the defendant the tools he needs to make an intelligent decision." *Turner*, 281 F.3d at 881; *see also Lafler*, 2012 WL 932019, at *12 ("[A]n erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance."). In *Turner*, the defendant alleged that his lawyer was ineffective because, among other things, the lawyer told him that the worst sentence he faced was 15 years to life, and that his case was not a "death penalty" case. As a result, the defendant turned down a second-degree murder plea offer and went to trial, where he was convicted of first-degree murder and robbery

and later sentenced to death. *Id.* at 879-81. We held that the defendant "was informed that he was subject to the death penalty, and of the plea offer," in contrast to cases where an attorney failed to advise his client of a plea offer or misled his client about the law. "That counsel and [the defendant] chose to proceed to trial based on counsel's defense strategy and presumably sincere prediction that the jury would not award a sentence of death, does not demonstrate that Turner was not fully advised of his options." *Id.* at 881.

In this case, Soto-Lopez had the information he needed to make an informed decision. Soto-Lopez's federal defender told him of the government's fast-track plea offer, and told Soto-Lopez that if he rejected the fast-track plea offer, his Sentencing Guidelines range would be much higher. Soto-Lopez nonetheless made a strategic decision to reject the binding 48-month sentence and roll the dice on a shorter sentence. The district court already found that Soto-Lopez's decision was not the result of "any affirmative misrepresentations of law or fact" by De Olivas, or by interference with Soto-Lopez's "previous understanding of the potential consequences of failing to obtain a new plea deal."[1] Critically, Soto-

_____

[1] *Compare Nunes v. Miller*, 350 F.3d 1045, 1049, 1054 (9th Cir. 2003) (finding ineffective assistance where counsel misinformed his client that government's plea offer was twice as long as what the government was actually offering); *United States v. Blaylock*, 20 F.3d 1458, 1465-66 (9th Cir. 1994) (finding deficient performance where counsel did not inform defendant of plea

2

Lopez declined the district court's offer to withdraw his guilty plea even after he learned of De Olivas's suspension from practice.

The majority dismisses as irrelevant the advice Soto-Lopez received from his federal defender, reasoning that the court should look only to what De Olivas did or did not do. Mem. Disp. at 3 n.1. In the majority's view, this narrow focus is warranted because De Olivas told Soto-Lopez that his federal defender had given him bad advice. *Id.* However, we cannot evaluate a lawyer's performance in a vacuum, but instead must look to the totality of circumstances. *See Strickland*, 466 U.S. at 688 ("[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."). A defendant who is as familiar with the courts as Soto-Lopez,[2] and who receives conflicting advice from two lawyers, is highly unlikely to take at face value the advice of only one of them. Whatever De Olivas said, Soto-Lopez *knew* that he ran some risk of receiving a higher sentence if he rejected the fast-track plea deal.

---

offer); *United States v. Day*, 969 F.2d 39, 42-44 (3d Cir. 1992) (finding deficient performance where counsel affirmatively misrepresented the maximum sentence and did not tell the defendant that he would be classified as a career offender at sentencing).

[2] Soto-Lopez previously had been removed from the United States after being convicted of an aggravated drug trafficking felony.

3

To be sure, the record contains little evidence that De Olivas had a strong basis for promising Soto-Lopez a 24- to 30-month sentence. But that fact shows only that De Olivas was an imperfect lawyer, not that he rendered constitutionally deficient assistance. *See Turner*, 281 F.3d at 881 (defendant has no "right to receive an accurate prediction of the outcome of his case"); *Lafler*, 2012 WL 932019, at *12 ("[A]n erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance.").

The majority tries to fill this gap by pointing to De Olivas's suspension from practice in the Southern District of California for unprofessional conduct. Mem. Disp. at 5-6. While the suspension certainly raises doubts about De Olivas's general competence, it does not show that he was deficient *in this case*. As the district court said, there is no "direct connection between Mr. De Olivas' advice and the Standing Committee's petition. The petition mentions that the Standing Committee became aware of 'acts of alleged incompetence and malpractice,' but states that the Standing Committee chose not to include such matters in the petition, instead limiting the petition to unprofessional conduct."

The majority also asserts that "there is no evidence that De Olivas had any experience" securing 24- to 30-month plea offers or sentences for other defendants. Mem. Disp. at 5. However, the fact that De Olivas subsequently obtained a 30-

4

month sentence, following a fast-track plea deal, for a similarly-situated defendant shows at the very least that such a sentence was legally possible.

Finally, we must be mindful of our obligation to give the lawyer the benefit of the doubt. *See Strickland*, 466 U.S. at 689 ("A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."); *Premo v. Moore*, -- U.S. --, 131 S. Ct. 733, 741 (2011) (explaining that "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage . . . . In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel.").

## II. Prejudice

The majority concludes that Soto-Lopez "has alleged sufficient facts to show prejudice" because, if Soto-Lopez had never met De Olivas, he "would not have rejected the government's plea," he and the government would have finalized the fast-track deal, and the district court would not have "had cause to exercise its discretion to reject" the deal. Mem. Disp. at 7-8.

The record does not support these conclusions. Although Soto-Lopez asserted in his 28 U.S.C. § 2255 motion that he "would have accepted the

Government's 48-month plea deal" if "De Olivas had not lied" to him, he declined the opportunity to withdraw his open guilty plea after he learned of De Olivas's suspension from practice. In addition, nothing in the district court's decision suggests that it necessarily would have accepted the fast-track plea deal for Soto-Lopez, who previously had been convicted of an aggravated felony.

## III. Conclusion

Even if we take all of Soto-Lopez's allegations to be true, there is insufficient evidence that he received ineffective assistance of counsel. I therefore would affirm the district court.